**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| FEDERAL TRADE COMMISSION*,* | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 19-19699 (FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| NEORA, LLC; SIGNUM BIOSCIENCES; | : | |
| SIGNUM NUTRALOGIX; and JEFFREY | : | |
| OLSON, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, Chief Judge:**

The Federal Trade Commission ("Plaintiff" or the "FTC") has filed a Complaint alleging that defendants Jeffrey Olson, Neora, LLC ("Neora" or the "Company") (Olson and Neora collectively, "Defendants"); and Signum Biosciences; Signum Nutralogix (Signum Biosciences and Signum Nutralogix collectively, "Signum") violated the Federal Trade Commission Act by, *inter alia*, operating an illegal pyramid scheme. [1]  Before the Court is a motion by Defendants, seeking to dismiss, or transfer this action to the United States District Court for the Northern District of Illinois, where an earlier filed action is pending. In the alternative, Defendants move to transfer this action to the United States District Court for the Northern District of Texas or the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1404(a).  For the reasons

---

[1]    The FTC settled its claims against Signum prior to filing the instant lawsuit, and filed a Stipulated Order for Permanent Injunction signed by the FTC and Signum, simultaneously with the Complaint in this matter.  *See* ECF No. 1-2, Proposed Order. This Court entered the Stipulated Order for Permanent Injunction on November 15, 2019.  *See* ECF No. 10.  Accordingly, the only remaining defendants in this action are Neora and Olson.

set forth below, Defendants' Motion to Transfer, pursuant to Section 1404(a) is **GRANTED** and this matter is transferred to the United States District Court for the Northern District of Texas.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts, as set forth in Plaintiff's Complaint, are taken as true by this Court on this motion to dismiss.

### A.  The Defendants and Neora's Business Model

Neora, formerly known as Nerium International, LLC ("Nerium") is an international multi-level marketing company that sells supplements, skin creams, and other products using a network of "Brand Partners," ("BPs") which was founded by defendant Olson in 2011.  Compl. ¶¶ 9,11,12.  Olson has been the Company's CEO since its inception.  *Id.* at ¶ 11.  Neora does business throughout the United States, but it is headquartered and maintains its only corporate office in Farmer's Branch, Texas.  *See* ECF No. 15, Declaration of Deborah Heisz ("Heisz Decl.") ¶ 3; Compl. ¶7. Olson is a resident of Fort Lauderdale, Florida.  Heisz Decl. ¶ 3; *see also* Compl. ¶ 9.

Since early 2015, Neora has been selling its "Nerium EHT Age-Defying Supplement, Mind Enhancement Formula" ("Nerium EHT").  *Id.* at ¶ 13.  Nerium EHT's primary ingredient is eicosanoyl-5- hydroxytryptamide ("EHT"), a supplement which was developed by defendant Signum Biosciences, and its wholly-owned subsidiary, Signum Neutralogix; EHT is licensed exclusively to Neora. *Id.* at ¶¶ 6, 13.  Signum's principal place of business is purportedly in Monmouth Junction, New Jersey.  *Id.* ¶ 8

In the fall of 2014, Neora and Signum  allegedly worked in tandem on a campaign to foster consumer interest in a dietary supplement containing EHT.  *Id.* at ¶ 56.  In February 2015, as part of the joint marketing effort with Neora, Signum issued a press release that espoused the potential benefits of EHT.  *Id.* at ¶ 58.  Allegedly, Signum emphasized that EHT was discovered "in a partnership between Princeton University and Signum Biosciences."  *Id.* at ¶ 58.  Shortly

2

afterward, in April 2015, Signum and Neora formally announced their partnership and launched Nerium EHT at Nerium's "GetReal Conference" for BPs in April 2015. *Id*. at ¶ 61. At the conference, Neora continued to emphasize Princeton University's purported connection to the development of EHT.

Neora's agents have regularly represented that its supplements can cure, treat, or prevent concussions, chronic traumatic encephalopathy ("CTE"), Alzheimer's disease, Parkinson's disease, and other brain disorders. *Id*. ¶¶ 13, 51. The FTC challenges the accuracy of Neora's claims about the health benefits of Neora EHT. *Id*. at ¶ 69. Furthermore, in the FTC's view, Neora's business model renders the company an "illegal pyramid scheme," because "[Neora's] compensation scheme emphasizes recruiting new BPs over the sale of products to consumers outside of the organization. [Neora's] business model makes it unlikely that BPs can earn money by selling product to outside consumers in response to genuine demand." *Id*. at ¶ 12.

## B. The FTC's Investigation of Neora

In June 2016, the FTC began investigating Neora in connection with its belief that Neora's business model is, in essence, an illegal pyramid scheme. *See* ECF No. 16, Declaration of Robert F. Johnson III ("Johnson Decl."), Ex A, Illinois Action Complaint at ¶ 19. As part of the investigation, the FTC issued a Civil Investigative Demand ("CID") to Neora, requesting information, documents, and data relating to Neora's marketing and sale of Neora EHT. *Id*. at ¶ 20. Thereafter, representatives of the FTC and Neora met in person in Chicago as part of a series of ongoing discussions to reach a resolution. *Id*. On four occasions, beginning in July 2018, the FTC provided Neora with draft complaints, with captions that indicated that the putative lawsuit was to be venued in the United States District Court for the Northern District of Illinois (NDIL), and threatened an enforcement action. Johnson Decl. ¶ 5, Exs. C-E, G-H.

Unrelated to this matter, on August 21, 2019, the United States Court of Appeals for the Seventh Circuit issued its decision in *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019), holding that the FTC could not obtain monetary relief under Section 13(b) of the Federal Trade Commission Act ("FTC Act").  *See* Johnson Decl., Ex. F., *Credit Bureau Center* Opinion. It is pursuant to Section 13 of the FTC Act that the FTC has filed the instant enforcement action here, and seeks to hold Defendants liable in this suit.

A few weeks later, on September 6, 2019, the FTC – for the first time -- sent Neora another draft complaint, setting forth this District as the venue for the putative lawsuit, not the Northern District of Illinois.  Johnson Decl. ¶ 5, Ex. G.  On October 29, 2019, the FTC sent Neora its final draft complaint, which, again, indicated the District of New Jersey as the venue for the action. Johnson Decl. ¶ 5, Ex. H.  In its cover letter along with the draft complaint, the FTC explained that the complaint was substantially similar to prior versions and, "[e]arlier today, the Commission unanimously authorized us to file the attached complaint against Nerium, Jeffrey Olson, and Signum, and, separately, the attached settlement with Signum. As we previously suggested, we are prepared to delay filing the complaint for a short time to give you a final opportunity to settle the entire matter."  *See* ECF No. 18-1, Declaration of Douglas M. McKenney ("McKenney Decl."), ¶1, Ex. A.   The letter urged that if Neora and Olson were not prepared to "settle the matter, please let us know and we'll move forward with our filing."  *Id*.  Defendants did not respond to the FTC's settlement overtures, but rather, initiated a lawsuit in the United States District Court for the Northern District of Illinois ("NDIL").

### C.  The Illinois Action

On November 1, 2019, Neora and Olson filed an action against the FTC in the NDIL seeking declaratory and injunctive relief regarding the legality of the FTC's threatened litigation (the "Illinois Action").  *See generally* Johnson Decl., Ex. A, Illinois Action Complaint.  In that

action, Neora seeks, among other things, a declaration that the FTC's interpretation of the FTC Act regarding pyramid schemes, as applied to Neora, is arbitrary and capricious, and to enjoin the FTC from enforcing its interpretation of the FTC Act. *See id*. Currently, a motion to dismiss the Illinois Action, filed by the FTC, is pending.[2]  *See* ECF No. 19, *Nerium International v. Federal Trade Commission*, No. 19-7189 (N.D.I.L. Dec. 23, 2019). The FTC argues, in that motion, that the NDIL  court lacks jurisdiction over Olsen and Neora's claims, and that the claims are not ripe for judicial review. *Id*.

### D.  The Instant Lawsuit

On the afternoon of November 1, 2019, a few hours after being notified of the Illinois Action, the FTC filed the lawsuit currently before this Court, alleging that Neora and Olsen 1) operate an illegal pyramid scheme, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); falsely promised Neora's BPs significant income, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); and that Defendants made false or misleading claims regarding the health benefits associated with Neora's products, in violation of Section 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. Subsequently, Defendants filed the instant motion to dismiss.

### II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)(internal quotation marks omitted)(quoting *Pinker v.*

---

[2]     A status conference was scheduled for May 20, 2020,  at which time the Court was to issue a ruling on the motion to dismiss, however it does not appear that the status conference occurred, or that the ruling was ever issued. *See* ECF No. 24, *Nerium International v. Federal Trade Commission*, No. 19-7189.

*Roche Holdings, Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).   While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).   Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *see Phillips*, 515 F.3d at 234.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to . . . state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *Id.* Finally, where "there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.   <u>ANALYSIS</u>

Defendants move for dismissal of this action, in favor of the Illinois Action, under the "first-to-file" rule, ECF No. 14-1, Def. Br. at 2, contending that "this action is subject to dismissal in favor of an already pending action filed by Neora and Olson against the FTC in the [NDIL], which was the epicenter of the FTC's long- running investigation and where the FTC, for nearly two years, had threatened to sue Neora for alleged consumer protection law violations." *Id*.  In the

alternative, Defendants seek transfer of this action, pursuant to 28 U.S.C. §1404(a), to the Northern District of Texas, where Neora maintains its corporate headquarters.  Def. Br. at 14.

### A.  <u>First-to-file Rule</u>

The "first-to-file" rule permits "trial judges to exercise their discretion by enjoining the subsequent prosecution of similar cases ... in different federal district courts."  *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990).  Where related suits "involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit."  *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993).  The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank."  *E.E.O.C.,* 850 F.2d. at 972.  "The letter and the spirit of the first-filed rule ... are grounded on equitable principles" and "the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments."  *Id*. at 977 (citations omitted).  The rule permits a district court to stay, transfer, or dismiss a duplicative later-filed action.  *Maximum Human Performance. Inc. v. Dymatize Enterprises,* Inc., No. 09–235, 2009 WL 2778104 (D.N.J. Aug. 27, 2009), *report and recommendation adopted*, 2009 WL 2952034 (D.N.J. Sept. 14, 2009) (citation omitted).

However, the first-to-file rule is not absolute.  There are exceptions, which provide that a court may decline to apply the rule on the basis of "(1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5); where the later-filed action has developed further than the first-filed action; and (6) 'when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.'"  *Id*. (quoting *EEOC*, 850 F.2d at 976); *see also  Catanese v. Unilever,* 774 F. Supp. 2d 684, 690

(D.N.J. 2011) (the rule does not apply "where there is evidence of bad faith, anticipatory suit, or forum shopping.").

Here, Defendants contend that this matter should be dismissed or transferred to the NDIL because the Illinois Action was filed first; [3] there is significant overlap between the subject matter and claims in both actions, and the parties in both actions would be identical "but for the FTC's gratuitous and specious inclusion of the Signum entities as co-defendants." Def. Br. at 10. Furthermore, in Defendant's view, the Seventh Circuit's *Credit Bureau* decision "undercut[s] the various consumer protection claims for damages, disgorgement and other relief that the FTC had been threatening to bring against Defendants, as reflected in its various draft complaints," and as a result, the FTC pivoted its potential lawsuit from the NDIL to this District. Def. Br. at 2.

In response, the FTC argues that the first-to-file rule is inapplicable here because the Illinois Action is not duplicative of the instant case, and moreover, the Illinois Action is an anticipatory declaratory judgement action, which was filed solely to preempt the FTC's imminent enforcement action, that it intended to file in this District. More specifically, the FTC contends that the Illinois Action is not duplicative because that action only addresses the claim based on Defendants' alleged illegal pyramid scheme, and does not involve the allegations regarding false income or the unsubstantiated health claims. Pl. Br. at 12-14. Second, the FTC argues that "even if the two cases were truly duplicative – which they are not – courts have consistently rejected application of the rule when the first-filed case is a declaratory judgment action like the one Neora filed in Illinois." *Id*. at 14.

As an initial matter, I agree with Defendants that the subject-matter of the instant suit and the Illinois Action, as well as the parties to both actions, are substantially similar. "The

---

[3]     The parties do not dispute that the Illinois Action was filed prior to the instant action, albeit by a matter of mere hours.

applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align," and "the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Villari Brandes & Kline, P.C. v. Plainfield Speciality Holdings II*, *Inc*., 2009 WL 1845236 at *18  (E.D. Pa. June 26, 2009).

While the instant lawsuit is broader than the Illinois Action, which focuses solely on the allegation that Neora is an illegal pyramid scheme, and includes additional parties, *i.e.* the Signum defendants, the first-to-file rule does not require that the actions be identical in order for the rule to apply.  *Nature's Benefit, Inc. v. NFI,* No. 06-4836, 2007 WL 2462625, at *5 (D.N.J. Aug. 27, 2007) (finding, although parties and claims in both lawsuits were not identical, "based upon the similarity of the centralized issue, as well as the closely intertwined parties . . .  the complaints have a 'substantial overlap' of parties and issues to establish *prima facie* support for implementation of the first-to-file rule.").   Importantly, the Signum defendants have already entered a consent order with the FTC -- on the same day the Complaint was filed here -- and, accordingly, have been dismissed from this matter.   Thus, the fact that they are not parties to the Illinois Action is insufficient to render the first-to-file rule inapplicable.

Indeed, both cases involve the primary allegation that Neora operates as an illegal pyramid scheme, in violation of the FTC Act.   But, the FTC points to *Atanassov v. Amspec Servs., LLC*, No. 15-3628, 2016 WL 740269, at *3 (D.N.J. Feb. 24, 2016) and *Leyse v. Bank of Am.,* No. 11-07128, 2016 WL 5928683, at *1 (D.N.J. Oct. 11, 2016), for the proposition that because the action pending in this District involves additional claims, the actions are not duplicative.  Pl. Br. at 13-14. However, in those cases, the disparity between the two lawsuits was much greater than in the instant matter.  For example, *Atanassov* involved two putative class actions under the FLSA, one in New Jersey and one in Texas.  2016 WL 740269 at *3. The Texas action was brought on "

behalf of inspectors and dispatchers, for (1) failure to pay overtime under the FLSA, . . . and (2) failure to pay the minimum wage under the FLSA," while the New Jersey action was brought "only on behalf of inspectors, for (1) failure to pay overtime under the FLSA . . . (2) retaliation under the FLSA" and (3) various state law wage and hour claims.  *Id*.  In finding that the actions were not duplicative, the court noted, "based on the different claims, the resolution of the Texas Action will not address Plaintiffs' retaliation claim under the FLSA, nor will it address Plaintiffs' state-law based claims."  *Id*.  Similarly, in *Leyse*, the "first-filed" lawsuit involved a different plaintiff, had been filed 8 years prior, and had been administratively terminated by the court.  2016 WL 5928683 at *6.  Here, however, the only remaining parties in both cases are identical, and the cases involve the same substantive body of law.  The resolution of the claims presented in this lawsuit, whether Neora's alleged promises regarding the BP's income earning capacities and the health benefits of Neora EHT, requires assessing whether Defendants' conduct violated the FTC Act, just like the claim regarding the illegal pyramid scheme.  Moreover, the resolution of this Action would, in fact, resolve all of the claims in the Illinois Action, because the claims at issue in that Action turn solely on whether Neora's business model constitutes an illegal pyramid scheme. Thus, it appears that the cases are substantially similar such that the threshold requirements for the application of the first-to-file rule are satisfied.

Nonetheless, I decline to apply the first-to-file rule, as I find that the Illinois Action is a declaratory judgment action, filed in bad faith in anticipation of the opposing party's imminent lawsuit.  *E.E.O.C.*, 850 F.2d at 976 (recognizing that courts have granted exceptions to the rule "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum."); *Amtrust at Lloyd's Ltd v. Lee*, No. 15-CV-1615, 2016 WL 1464650, at *5 (D.N.J. Apr. 12, 2016) (declining to apply "first-to-file" rule where "declaratory judgment action was filed mere hours before a mirror-image action . . .  seeking

10

coercive relief."); *Telebrands Corp. v. martFIVE, LLC*, No. 13-3374, 2013 WL 4675558, at *6 (D.N.J. Aug. 30, 2013) ("because Plaintiff filed a declaratory judgment action in anticipation of Defendants filing suit for coercive relief, the Court will not apply the first-filed rule").   The inquiries critical in determining whether the filing of a lawsuit was anticipatory or prompted by bad faith "are quite similar, as paramount in both considerations is the question of whether the first-filed action was filed in apparent anticipation of imminent judicial proceedings by the opposing party." *IMS Health, Inc. v. Vality Tech. Inc.*, 59 F. Supp. 2d 454, 463 (E.D. Pa. 1999) ("[T]he bad faith inquiry also encompasses consideration of the amount of time between the declaratory and affirmative filings, with a shorter period indicating bad faith.").

    In *E.E.O.C. v. University of Pennsylvania*, the Third Circuit affirmed the district court's decision to reject first-to-file rule, in light of one party's bad faith. 850 F.2d at 977.   There, the Equal Employment Opportunity Commission ("EEOC") issued a subpoena to the University as part of its investigation into discrimination charges filed with the EEOC. *Id*. at 972-3.  The EEOC notified the University that unless it responded to the subpoena within twenty days of receiving the EEOC's decision declining to modify the subpoena, subpoena enforcement proceedings would be initiated. *Id.* at 973.  However, the University filed suit in the United States District Court for the District of Columbia three days before the expiration of the twenty-day period, during which the EEOC stated it would refrain from taking any judicial action. *Id*. at 972.  After the expiration of the response period, the EEOC filed an action in the Eastern District of Pennsylvania. *Id.*  In affirming the district court's refusal to dismiss the EEOC's second-filed action in favor of the University's, the Third Circuit explained that "[t]he timing of the University's filing in the District of Columbia indicates an attempt to preempt an imminent subpoena enforcement in the Eastern District of Pennsylvania," which had unfavorable law for the University. *Id.* at 977.

11

Similarly, the facts in the present case suggest that the Illinois Action was merely an attempt to beat the FTC to the courthouse by filing suit in Defendants' preferred district.  Although Defendants contend that they filed "their action in the NDIL because that was where the FTC had wanted to sue from the inception of its investigation and where the FTC's misconduct and overreaching occurred," and that they were not motivated by bad faith, or improper forum shopping concerns, the history of the parties' settlement negotiations reveals otherwise.  Def. Reply Br. at 7.  As indicated by the cover letter accompanying the FTC's final draft complaint, on October 29, 2019, the FTC informed Neora and Olson that it had approved the filing of the lawsuit and the settlement with Signum.  McKenney Decl., ¶1, Ex. A.   The FTC further represented that "we are prepared to delay filing the complaint for a short time to give you a final opportunity to settle the entire matter – we told the Commissioners that we might wait a week."  *Id.*  Instead of responding, three days later, Defendants filed the Illinois Action. "This chronology is indicative of an improper first filing." *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc*., 669 F. Supp. 2d 613, 624 (W.D. Pa. 2009) (holding, as filed in bad faith a declaratory action filed three days after the plaintiff received a letter and draft complaint from the defendant indicating the defendant would file suit in a week); *Church & Dwight v. Mayer Labs., Inc.*, No. 08-5743, 2010 WL 3907038, at *8 (D.N.J. Sept. 28, 2010) (declining to apply "first-to-file" rule where plaintiff in first-filed action "filed its declaratory judgment suit shortly after receiving [defendants] draft complaint").  *see also Koresko v. Nationwide Life Ins. Co*., 403 F. Supp. 2d 394, 401 (E.D. Pa. 2005) ("Some evidence that a first-filed case was filed for the purpose of forum shopping ... is necessary before courts find it was improperly anticipatory, and therefore warranted a departure from the first-filed rule.").  Also, it appears the Seventh Circuit has favorable law for Defendants, because that Circuit has eliminated the FTC's ability to seek monetary restitution as part of a consumer protection enforcement action, under Section 13(b) of the FTC Act, relief which the

FTC is seeking in the instant matter.[4]  *See Credit Bureau Ctr., LLC*, 937 F.3d at 786 (holding that Section 13(b) of the FTC Act does not authorize monetary relief)

Because it appears that Neora and Olson's decision to  file suit in the NDIL were motivated by bad faith, and venue gamesmanship, I need not apply the first-to-file rule.  Accordingly, Defendants' motion to dismiss this matter based on the first-filed rule is denied.

## B.  Section 1404(a) Transfer[5]

The Court may transfer an action to any venue "where [it] might have been brought ... for the convenience of the parties, in the interests of justice."  28 U.S.C.  § 1404(a).  The decision to transfer is within "the sound discretion of the trial court."  *See Teva Pharmaceuticals USA, Inc. v. Sandoz Inc*., No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017); *Cadapult Graphic Sys. v. Tektronix,* Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000).  In deciding a motion to transfer under

---

[4]     The Court recognizes that the FTC was also likely forum shopping, by choosing to file its enforcement action in this district, and the FTC was likely motivated by a desire to avoid the Seventh Circuit's *Credit Bureau* decision.  However, the first to file rule directs Courts to consider the plaintiff's motivations in filing the first action.  Moreover, Neora clearly lacked a good faith basis for filing suit in the NDIL.  Having received two separate Complaints, setting forth a venue in this District, Neora was on notice that the FTC intended to venue the potential enforcement action in this District, having received two separate draft complaints captioned for the District of New Jersey.  Nor does it appear that the NDIL has any specific connection to the parties' claims, other than the fact that Neora does business there, as it does throughout the United States, and that the FTC's Chicago office regional office conducted the FTC's investigation and the settlement negotiations; Defendants have no offices or facilities in the state and none of the defendants are residents of Illinois.

[5]     In their moving brief, Defendants argue that, in the alternative, the Court should transfer this action "to the NDIL, where the Illinois Action is currently pending, and if not there, then to the Northern District of Texas where Neora is headquartered and maintains its only corporate office."  Def. Br. at 14.  Confusingly, however, in their reply brief, Defendants seemingly abandon their argument for a Section 1404(a) transfer to the NDIL, asserting "[if]f the Court is not so inclined to enforce the First-To-File Rule, then it should apply the traditional standards under 28 U.S.C. §1404 and transfer this action to the NDTEX, which, in relation to New Jersey, is plainly the most convenient and appropriate forum to venue this case."  Reply Br. at 7; *see also* Reply Br. at 10 ("If the Court is inclined not to apply the First-To-File Rule, then it should transfer this action to the NDTEX under 28 U.S.C. § 1404(a)").  In any event, because I find that transfer to the Texas is appropriate, I need not engage in a balancing of the public and private interest factors with regard to whether Section 1404(a) would support a transfer to Illinois.

§ 1404(a), the Court first determines whether the transferee district is one in which the action "might have been brought."  *See Solomon v. Cont'l Am. Life. Ins. Co*., 472 F.2d 1043, 1045 (3d Cir. 1973).  The transferee district must be a proper venue under the relevant venue provision and it must have personal jurisdiction over the defendants.  *See Shutte v. Armco Steel Corp*., 431 F.2d 22, 24 (3d Cir. 1970); *Control Screening, LLC v. Integrated Trade Sys., Inc*., No. 10-499, 2011 WL 3417147, at *4 (D.N.J. Aug. 3, 2011); *Teva*, 2017 WL 2269979, at *5.

If the transferee district is proper, the court then considers whether convenience and fairness weigh in favor of transfer on an individualized, case-by-case basis.  *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999); *Calkins v. Dollarland, Inc*., 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (noting the inquiry "is flexible and must be made on the unique facts of each case").  The Third Circuit has enumerated certain private and public factors that bear on the transfer analysis.  *See Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879, 883 (3d Cir. 1995).  However, the *Jumara* factors are not exhaustive, "[t]here is no rigid rule governing a court's determination," and "each case turns on its facts."  *Lacey v. Cessna Airfract Co.,* 862 F.2d 38, 43 (3d Cir. 1988) (internal quotations omitted).  The moving party has the burden of demonstrating that transfer is not only adequate but more appropriate.  *See Yocham v. Novartis Pharms. Corp*., 565 F. Supp. 2d 554, 557 (D.N.J. 2008) (noting a transfer motion "must not be lightly granted") (further citations omitted); Hoffer v. InfoSpace.com. Inc., 102 F. Supp. 2d 556, 572 (D.N.J. 2000)(collecting cases).

Here, Defendants seek to transfer this matter to either the Northern District of Texas (NDTEX), where Neora is headquartered, or the NDIL.  The parties do not dispute that this case could have been brought in in either district.  Pl. Br. at 17 n. 17; Def. Br. at n. 4; *see also* 28 U.S.C. § 1391(b) (providing that a civil action may be brought, inter alia, "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" or "any judicial district in which any

14

defendant is subject to the court's personal jurisdiction with respect to such action.").  Accordingly, I will weigh the private and public interest factors to determine whether transfer is appropriate.

### i.  The Private Interest Factors Weigh in Favor of Transfer

The private interest factors include:  (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference;  (3) whether the claim arose elsewhere;  (4) the convenience of the parties as indicated by their relative physical and financial condition;  (5) the convenience of the witnesses (only to the extent that the witnesses may actually be unavailable for trial in one of the fora); and  (6) the location of books and records (only to the extent that the files could not be produced in the alternative forum).  *Jumara,* 55 F.3d at 879.

I find that the bulk of these factors, with the exception of Plaintiff's forum preference, are either neutral or weigh in favor of transfer.

Here, the FTC chose the instant forum and plainly prefers to litigate in this District.  In that regard, the FTC Act grants the Commission broad discretion to file an enforcement action in any appropriate district.   *See* 15 U.S.C § 53(b) (explaining that where "any provision of law enforced by the Federal Trade Commission . . . the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice . . . .  Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under [28 U.S.C §1391.] ").  However, while a plaintiff's choice of forum is a "paramount concern" that is considered "presumptively correct," *Lawrence v. Xerox Corp*., 56 F. Supp. 2d 442, 452 (D.N.J. 1999), "[t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.,* 102 F. Supp. 2d 518, 530 (D.N.J. 2000); *see also Honeywell,* 817 F.Supp. at 481 (explaining that "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference."); *Tischio v. Bontex, Inc.,* 16 F.Supp.2d 511, 519 (D.N.J.1998)

(explaining that plaintiff's forum preference is entitled to less where "the choice of forum ... has little connection with the operative facts of the lawsuit.")

This District's ties to this case are tenuous, at best.  In an attempt to connect this litigation to New Jersey , the FTC emphasizes that Neora has often referenced Princeton's alleged role in developing EHT, when advertising Neora EHT.  *See* Pl. Br. at 21.  The FTC also highlights that the product at issue in this case, Neora EHT, was discovered, developed, tested, and researched in this district by Signum, and is manufactured in this district by Vitaquest International, LLC, which makes New Jersey the most appropriate forum.  Pl. Br. at 24.  However, the manufacturing process for Neora EHT does not directly bear on the parties' claims.  Moreover, it appears that Vitaquest no longer manufactures Neora EHT and the product is now manufactured by a company in Texas. *See* ECF No. 20, Supplemental Declaration of Debora Heisz ("Supp. Heisz Decl.") ¶10. (explaining that Neora EHT was originally manufactured in New Jersey, by a New Jersey Company, but since March 2017, the product has purportedly been manufactured in Texas by a different vendor).  While the statements regarding Princeton's alleged involvement could conceivably bear on the claims that Neora misrepresented the efficacy of Neora EHT, they have little, if any, connection to the other claims in this matter: whether Neora's business model constitutes an illegal pyramid scheme and whether Neora mispresented the income earning capacities of its BPs.  *Eddie Kane Steel Prod., Inc. v. Alabama Plate Cutting Co.,* No. 18-15167, 2019 WL 3281623, at *11 (D.N.J. July 19, 2019) (reducing " the amount of deference afforded to Plaintiff's forum choice because New Jersey has minimal connections to the operative facts of the lawsuit" where only one of complaint's claims three claims had any connection to New Jersey). Thus, the FTC's choice in forum is entitled to less weight in the transfer analysis

Defendants' forum preference and the location where the claims arose weigh in favor of transfer.  Defendants prefer to litigate in Texas, where Neora, one of two remaining defendants in

this action, is headquartered and has its only corporate office.[6]   Neora sells its products, and has

BPs business throughout the United States, and thus, the claims underlying this action arose all

over the country in each district where Neora conducted business.   *Franklin U.S. Rising Dividends*

*Fund v. Am. Int'l Grp., Inc.,* No. 13-05805, 2014 WL 1555133, at *6 (D.N.J. Apr. 14,

2014), *aff'd,* 13-5805, 2014 WL 3748214 (D.N.J. July 29, 2014) (finding that center of gravity for

case was where alleged misrepsentions were made).   However, it appears that that Texas has a

greater connection to this lawsuit than any other potential forum.   As explained by Neora's co-

CEO, Deborah Heisz, the "[d]ecisions concerning Neora's business and operations, including,

without limitation, with respect to marketing, sales, products, and the management of Neora's

nationwide network of Brand Partners, are made and emanate from the Farmer's Branch [Texas]

Office."   *See* Supp. Heisz Decl. ¶ 6.   Additionally, Olsen, Neora's CEO, resides in Florida, but not

New Jersey, and the rest of Neora's executive level employees, including its Chief Financial

Officer and Chief Sales and Marketing Officer, reside in Texas where the Company maintains its

headquarters. *Id*.   ¶ 4. Moreover, the bulk of the BPs, whom the FTC alleges are the parties harmed

by Neora's misrepresentations, are located in Texas.   There are currently 2,675 active BPs in

Texas, as opposed to only 754 BPs active in New Jersey. Heisz Decl. ¶ 13.

---

[6]      The parties dispute the location of Signum's current headquarters.  The FTC asserts, as it did in its Complaint, that Signum is headquartered in New Jersey. However, in a supplemental declaration from Neora's Co-CEO, Defendants assert that Signum is now headquartered in Colorado and has been "for the past several years." Heisz Supp. Decl. 7. In support of that assertion, Defendants proffer a copy of Signum's corporate registration from the Colorado Secretary of State website, and explain that "[m]ost of Neora management's communications with Signum by mail or telephone are to Signum's headquarters in Boulder, Colorado. When Neora makes payments to Signum, they are wired to Signum's account located at Signum's bank in Boulder, Colorado." Heisz Supp. Decl. 7-8.  I find that Signum's location is immaterial to the transfer analysis, as the FTC has already settled its claims against Signum, and therefore, it is no longer a defendant in this matter. Moreover, to the extent Signum employees may be potential witnesses, neither the FTC nor Defendants have represented that such witnesses would be unavailable in either forum.

The remaining private interest factors, such as the convenience of the witnesses and the location of books and records, are neutral.  Defendants asserts that Neora's books and records are maintained in its office in Farmer's Branch, Texas.  Heisz Decl ¶ 5.  However, Defendants have not suggested that these documents would be unavailable if this litigation remained in this district; in fact, these documents could be transmitted electronically or easily shipped.  Therefore, this factor carries little weight and is in equipoise.

Here, the FTC has identified various potential  non-party witnesses, primarily high-level BPs and former Neora executives, who reside throughout the United States; of these witnesses only one resides in Texas and none reside in New Jersey.  McKenney Decl. ¶¶ 8-9.  On the other hand, Defendants assert that "Neora's witnesses are current and former employees who reside in or around Dallas, Texas."  Def. Br. at 22.  Neither party has suggested that any of these witnesses would be unavailable based on venue, however, it appears that the bulk of the non-party witnesses would be outside of the subpoena power of either court, as they do not reside in either Texas or New Jersey.  Thus, the convenience of the potential witnesses is neutral.

Accordingly, I find that  Defendants' forum preference and the location where the claims arose weigh heavily in favor of transfer, while the remaining factors, with the exception of Plaintiff's preference, are neutral, and thus,  the private interest factors tip slightly in favor of transfer.

### ii.  Public Interest Factors

The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) any relative administrative difficulty resulting from court congestion; (4) local interest in deciding local controversies; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Jumara,* 55 F.3d at 879-80.

The parties agree that, here, the public interest factors are largely neutral. Def. Br. at 18-19 n. 5. Indeed, the operative claims involve the interpretation of the FTC Act, a federal statute, rendering neither court more appropriate than the other, nor is there any doubt regarding the enforceability of the judgement.

However, Defendants contend that the "NDTEX has a local interest in this action because of its extensive connections with alleged events giving rise to the FTC's claims and the potential impact of having a local business possibly be enjoined from operating or selling its products." Def. Reply Br. at 22. In response, the FTC argues that the interest of justice weigh against transfer because "[i]f the Illinois Action somehow survives the FTC's motion to dismiss, the FTC will move to transfer that action to this Court, to conserve judicial resources and eliminate the possibility of inconsistent resolution of the pyramid claims. But the possibility of inconsistent results dooms Defendants' alternative forum, the Northern District of Texas" Pl. Br. at 31 (citations omitted). However, there is no reason why the FTC cannot move to transfer the Illinois Action to the NDTEX, if this action is transferred to the NDTEX.

The FTC also asserts the relative congestion of the dockets in the two districts weighs slightly against transfer because "according to 2019 data, the overall time to disposition for all cases in this district is only 5 months, compared to 7.6 months and 6.7 months in the Northern District of Illinois and Northern District of Texas, respectively." Pl. Br. at 29. While this factor weighs slightly against transfer, I note that the relative congestion of the dockets is of little import, particularly where the difference in adjudication time is a merely a difference of weeks, thus, I grant it little weight. *Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.,* 105 F. Supp. 2d 370, 378 (D.N.J. 2000) (noting that "Court has never found this 1404(a) factor to be among the most important"). Furthermore, although the time to disposition for cases in both districts is comparable, the District of New Jersey is far more congested. As of March 31, 2020, there were 38, 125 cases

pending in this District, compared to only 12, 510 in the Northern District of Texas. *See* U.S.

Courts, "Civil Federal Caseload Statistics – Civil Cases Filed, Terminated, and Pending by

Jurisdiction   (March 31, 2020)," https://www.uscourts.gov/statistics/table/c-1/federal-judicial-

caseload-statistics/2020/03/31  (last visited July 21, 2020).

Furthermore, I find that , as a practical consideration, many of the potential witnesses are

likely to be Neora employees, who largely reside in Texas, with the exception of defendant Olson

who commutes to Texas regularly; thus litigating this matter there may make the trial more

convenient, more expeditious, and less expensive.  *See In re USA Techs., Inc. Sec. Litig.*, No. 18-

13759, 2019 WL 4785780, at \*4 (D.N.J. Sept. 30, 2019) (finding that transfer to the Eastern

District of Pennsylvania "where most potential witnesses  and at least two defendants" resided,

was practical and cost-effective.).

Thus it appears that the public factors bearing on the Section 1404(a) analysis are largely

neutral. I find that Defendants have met their burden of establishing that transfer to the Northern

District of Texas serve the interests of justice and the convenience of the parties. Accordingly,

Defendants' motion to transfer this matter to Texas, pursuant to Section 1404(a), is granted.[7]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss or transfer based on the first-to-

file-rule is **DENIED**. However Defendants' transfer motion pursuant to Section 1404(a) is

**GRANTED**; this matter shall be transferred to the United States District Court for the Northern

District of Texas.

---

[7]      Defendants requested that, in the event the Court denied its motion to dismiss or transfer, the Court toll their time to respond to the FTC's Complaint until 30 days after the date the Court decides the instant motion. *See* Def. Br. at 1 n. 1.   Because I find that transfer is warranted under Section 1404(a), I need not determine whether Defendants are entitled to additional time to respond to Plaintiff's Complaint. Defendants may file their request for additional time in the transferee court.

DATED:  July 27,  2020                        /s/ Freda L. Wolfson
                                              Hon. Freda L. Wolfson
                                              U.S. Chief District Judge